FILED
2015 Feb-10 PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TABATHA KELLY HARPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 6:13-cv-02114-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

I.  Introduction

The plaintiff, Tabatha Harper, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Harper timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Harper was thirty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and has a tenth grade education. (Tr. at 63.) She previously stated that she had obtained a GED (Tr. at 307), but later stated at a

supplemental hearing that she had not obtained a GED. (Tr. at 671, 686-87.) The ALJ chose to put Ms. Harper down as having a GED because she had previously told an ALJ and filed paperwork stating she did have one. (Tr. at 687.) Her past work experiences include employment as a teacher's aide, home health aide, sales clerk and file clerk. (Tr. at 340.) Ms. Harper claims that she became disabled on September 17, 2009, due to degenerative disc disease in the neck and back, bone deteriorate in the knees, bipolar disorder, post-traumatic stress disorder, and major depression issues. (Tr. at 669-73.)[1]

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial

---

[1] Ms. Harper had filed a prior application for DIB and SSI on June 5, 2007, alleging a disability onset of September 15, 2006. (Tr. at 115.) This application was denied by a different ALJ on September 16, 2009. (Tr. at 115-29.) The Appeals Council denied her request for review. (Tr. at 140-43.) The ALJ's decision was upheld by the District Court for the Northern District of Alabama on April 12, 2011. (Tr. at 23.) Based upon this, Plaintiff amended the disability onset date for her present application to September 17, 2009, the day after the final and binding decision of the prior ALJ. (Tr. at 669.)

gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or

medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Harper met the insured status requirements of the Social Security Act through June 30, 2011. (Tr. at 25.) He further determined that Ms. Harper has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's degenerative disk disease in the lumbar spine; mild obesity; degenerative joint disease

of the knees with a history of multiple arthroscopic procedures; and bipolar disorder are considered "severe" based on the requirements set forth in the regulations. (Tr. at 26.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27.) The ALJ did not find Ms. Harper's allegations to be totally credible (Tr. at 29), and he determined that she has the following residual functional capacity: light work with a number of limitations, such as lifting/carrying 10 pounds frequently and 20 pounds occasionally; sit two hours at a time and six hours total in an eight hour workday; stand thirty minutes at a time and two hours total in an eight hour workday; walk thirty minutes at a time and one hour total in an eight hour workday. (Tr. at 28.) She can frequently reach and occasionally push and pull with the upper extremities, and occasionally use the bilateral feet for operation of foot controls; can occasionally climb stairs and ramps, climb ladders or scaffolds, and stoop; can frequently balance; can never kneel, crouch or crawl; can never work at unprotected heights, can occasionally work around moving mechanical parts, and frequently operate a motor vehicle; can frequently work around vibrations, but never around very loud noises. (Tr. at 28.)

According to the ALJ, Ms. Harper is unable to perform any of her past relevant work, she is a "younger individual," and has "at least a high school education" as

those terms are defined by the regulations. (Tr. at 33.) He determined that "[t]ransferability of job skills is not material to the determination of disability" because a finding of "not disabled" was supported whether or not she had transferable job skills. (*Id.*) The ALJ found that Ms. Harper has the residual functional capacity to perform a significant range of light work. (Tr. at 34.) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.21 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as hand packager, production inspector, and garment folder. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 17, 2009, through the date of this decision." (*Id.*)

II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by

substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See*

*Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Ms. Harper alleges that the ALJ's decision should be reversed and remanded for four reasons. First, she believes that the ALJ's findings were not based on substantial evidence. (Doc. 9 at 6.) Second, Plaintiff contends that the ALJ's physical RFC findings did not adequately address her obesity. (Doc. 9 at 7.) Third, she believes that the ALJ's RFC findings do not address her mental impairments. (Doc. 9 at 9.) Finally, Plaintiff argues that the ALJ erred by rejecting the opinion of her treating sources. (Doc. 9 at 10.)

A. Substantial Evidence for ALJ's RFC

Ms. Harper's first allegation of error is that the ALJ found that she had the RFC to perform light work, while the ALJ for her prior disability claim found she had an RFC for sedentary work. Plaintiff argues that the prior ALJ decision has a *res judicata* effect on the subsequent ALJ decision, and that the "Commissioner had the burden of demonstrating that the claimant's condition had improved" in order to justify a higher RFC. (Doc. 9 at 7.) The ALJ failed to make any finding that her condition had improved, and therefore Ms. Harper argues that the ALJ erred in giving her an RFC for light work.

Plaintiff cites several district court decisions as support for her argument. *See,*

*e.g., Bloodsaw v. Apfel*, 105 F.Supp.2d 1223, 1226 n. 6 (N.D. Ala. 2000) (stating that prior administrative ruling by ALJ was binding on subsequent ruling, and that failure to provide any justification for setting aside prior ruling was "most unusual—even unbelievable"). However, several subsequent decisions by the Eleventh Circuit demonstrate that the law in this circuit is that an ALJ need not give preclusive effect to a prior ALJ finding when the claimant's current application concerns an "unadjudicated time period." *McKinzie v. Comm'r of Soc. Sec.*, 363 F. App'x 71, 73 (11th Cir. 2010). *See also Moreno v. Astrue*, 366 F. App'x 23 (11th Cir. 2010); *Luckey v. Astrue*, 331 F. App'x 634 (11th Cir. 2009); *cf. Reynolds v. Bowen*, 844 F.2d 451, 453-54 (7th Cir. 1988) (determinations on prior applications "completely irrelevant" to a later application for a different time period - the applications are "completely separate, distinct, and unrelated").

In this case, Ms. Harper specifically amended her onset date to September 17, 2009, the day after the previous ALJ's decision. The current claim involves the period from that day until April 25, 2012, the date of the ALJ decision at the heart of this appeal. Therefore, the ALJ's decision concerned an unadjudicated time period, and the ALJ was not required to give *res judicata* effect to the prior ALJ's RFC finding.

### B.   Proper Consideration of Plaintiff's Obesity

Plaintiff next alleges that the ALJ erred by failing to adequately consider her

obesity in his RFC finding. In support, Plaintiff cites to Social Security Ruling (SSR) 02-01p, which states that obesity can cause functional limitations and can complicate and exacerbate physical and mental conditions. The ALJ found that "mild obesity" was among Ms. Harper's list of severe impairments. (Tr. at 26.) The ALJ also specifically discussed Plaintiff's obesity when he explained the reasoning behind his RFC finding, and specifically mentioned SSR 02-01p. (Tr. at 30.)

As the Eleventh Circuit has stated, the important question is not whether an impairment exists, but "the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). The Plaintiff has failed to demonstrate that her obesity caused any limitations beyond those imposed in the ALJ's RFC. As the ALJ noted, no treating or examining physician has said that Plaintiff's obesity significantly limited her in any way. (Tr. at 30, 416-33, 482-93, 552-56, 559-69, 575-96, 640-50, 653-59.) The ALJ also correctly noted that no physician had ever recorded a recommendation that the Plaintiff lose weight. (Tr. at 30, 416-33, 482-93, 552-56, 559-69, 575-96, 640-50, 653-59.) This constitutes substantial evidence towards the ALJ's determination that Plaintiff's obesity did not cause any limitations on her ability to work.

The Plaintiff also cites an opinion from one of Plaintiff's treating physicians, Dr. Lloyd C. Dyas ("Dyas"), which provided for more severe restrictions than the ones

imposed in the ALJ's RFC. (Doc. 9 at 8.) However, Dyas' treatment notes do not ever mention Plaintiffs' obesity or make any statements concerning how her obesity produced or worsened any of her impairments. (Tr. at 416-33, 482-93, 653-58.) Plaintiff has failed to show that her obesity caused any limitations beyond those found by the ALJ in his RFC. Substantial evidence supports the ALJ's determination that her obesity did not cause any additional limitations, and therefore Plaintiff's arguments concerning her obesity are unavailing.

    C.    Proper Evaluation of Mental Impairments

Plaintiff points out that the ALJ included bipolar disorder as a severe impairment at step three of his analysis, and found that she had moderate difficulties in maintaining social functioning, concentration, persistence, and pace. (Tr. at 26, 27.) Therefore, she argues that he was "duty bound" to address the limitations arising from these conditions, and erred in producing an RFC assessment devoid of any resulting mental limitations. (Doc. 9 at 10.)

As an initial matter, it does not appear that the ALJ committed error in failing to include mental limitations in his RFC finding. The ALJ found that the Plaintiff's allegations of disabling mental impairments were inconsistent with the medical record. (Tr. at 30.) For example, at the time of Plaintiff's initial mental health visit when she was not taking any medication, she was noted to have average appearance, appropriate

eye contact, appropriate speech, appropriate memory, normal organization of thoughts, unremarkable thinking, average thought content, fair insight and judgment, and a congruent affect, all of which is inconsistent with disabling mental limitations. (Tr. at 506.) On June 25, 2011, she was admitted to the hospital following an April 2011 tornado, which Plaintiff testified made her mental problems "a lot worse." (Tr. at 103, 594.) However, the hospital notes recorded no functional mental limitations, and noted that Plaintiff was able to communicate thoughts and feelings, make decisions, sequence information, meet her basic needs, live independently, and concentrate and follow instructions. (Tr. at 594.) The evidence in the mental record may constitute substantial evidence that Plaintiff's mental impairments do not impose any functional limitations on her ability to work. *See Moore*, 405 F.3d at 1213 n.6 (stating that the important question is not the existence of impairments but their limitations they impose on the claimant's ability to work).

Assuming *arguendo* that the ALJ did commit error by not including any mental limitations in his RFC finding, any such error was harmless because limitations based on the Plaintiff's mental impairment were included in the hypothetical presented to the VE. For a VE's testimony to provide substantial evidence, the ALJ's hypothetical must comprise all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2012). At the supplemental hearing, the ALJ posed a hypothetical to

the VE which included a "reduction in persistence, pace, and concentration," as well as "no more than occasional interaction with supervisors and coworkers and the public." (Tr. at 698.) Responding to this hypothetical, the VE determined that with these additional limitations an individual would be able to work at light, unskilled occupations such as hand packager, production inspector, and garment folder. (*Id.*) The ALJ ultimately identified these same jobs at step five in his decision. (Tr. at 34.) Therefore, even if it was error not to include mental limitations in his RFC finding, that error was harmless because the Plaintiff would be able to perform the jobs identified by the ALJ even with relevant mental limitations imposed. *See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (failure to include driving limitation in hypothetical posed to VE was harmless where the jobs identified by the VE could be performed without driving.)

    D.    Substantial Evidence Supports Rejection of Treating Source Opinion

Plaintiff's final argument is that the ALJ erred by improperly rejecting the opinions of treating therapist Carla Roberts ("Roberts") and treating physician Dyas. (Doc. 9 at 10-12.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The

weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when: " (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)(*citing Lewis*, 125 F.3d at 1440).

The Court will first examine the opinion of the therapist, Roberts. On November 7, 2011, Roberts completed a Supplemental Questionnaire where she indicated that Plaintiff's mental health limitations were either "marked" or "extreme." (Tr. at 599-600.) According to Roberts, Plaintiff had marked restrictions in: the activities of daily living; maintaining social functioning; concentration, persistence, or pace; ability to understand, remember, and carry out instructions in a work setting; ability to respond appropriately to supervision; ability to respond appropriately to coworkers; ability to perform simple tasks; and ability to perform

repetitive tasks. (*Id.*) Roberts also indicated that Plaintiff had extreme limitations on her ability to respond to customary work pressures, and that these limitations had lasted or could be expected to last for twelve months or longer. (*Id.*)

A therapist is not an acceptable medical source who can be used to establish an impairment. 20 CFR § 404.1513(a). *See also Crawford*, 363 F.3d at 1160 (chiropractor's opinion could not establish the existence of an impairment because chiropractors were not on the list of "acceptable medical sources"). However, therapists are specifically listed among "other sources" that may be used in addition to evidence from "acceptable medical sources" to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(a)(1).

Although Roberts opinion therefore could not be used to establish that Plaintiff had a mental impairment, the ALJ said that it was "considered but given little weight" because there was no medical evidence to support its serious functional limitations. (Tr. at 32.) As an initial matter, Plaintiff apparently argues that in reality the ALJ gave the opinion "no weight" because he did not impose any mental limitations in his RFC. (Doc. 9 at 10.) As discussed above, any error on the part of the ALJ in failing to include mental limitations in his RFC finding is harmless. *See* Part III.C, *supra*. Also, Roberts' opinion could not be used to establish a mental impairment, even had the ALJ attached great weight to it; therefore Plaintiff's argument that the ALJ in fact gave it "no

Page 15 of 19

weight" is unavailing. Substantial evidence supports the ALJ's decision to accord Roberts' opinion little weight in any case.

First, the Supplemental Questionnaire Roberts filled out did not provide any reasoning behind the limitations it imposed. (Tr. at 599-600.) As discussed above, the medical record does not support the functional limitations imposed by Roberts. *See* Part III.C. Hospital notes from her June 25, 2011 hospital visit, which was after the tornado that supposedly made her mental conditions considerably worse, said that she was able to communicate her thoughts and feelings, had intact social skills, could make decisions and sequence information, and could concentrate and follow instructions, and the only limitations noted were "financial" and the death of her fiancee. (Tr. at 594.) In the notes on her final recorded mental health treatment visit of October 12, 2011, Plaintiff had a depressed mood and anxious affect, but also appropriate eye contact, speech, and memory; tangential organization of thought; and fair insight and judgment. (Tr. at 611.) In addition to the relative normalcy of these treatment notes, Plaintiffs daily activities contradict the serious limitations imposed by Roberts. For example, Plaintiff went shopping, attended church, had a girlfriend she spoke to frequently, visits with friends at her mothers beauty parlor, and has no problems caring for herself. (Tr. at 321, 336, 678.) The discrepancy between Roberts' opinion and Plaintiff's treatment records and reported activities provide substantial evidence for

the ALJ's decision to accord little weight to Roberts' opinion.

Plaintiff also alleges error because the ALJ gave Dyas' opinion little weight. (Doc. 9 at 12.) On November 16, 2011, Dyas completed a Physical Capacities Evaluation wherein he opined that the Plaintiff could sit for two hours in an eight hour day but could perform no hours of standing and walking. (Tr. at 634.) He also determined that Plaintiff could never climb stairs or ladders or balance, never bend, stoop, or reach, and could not work around hazardous machinery. (*Id.*) He also was of the opinion that Plaintiff experienced significant pain, and that physical activity would greatly increase her pain to such a degree as to cause distraction from or total abandonment of tasks. (Tr. at 635.) The ALJ determined that the significant degree of restriction imposed by Dyas was inconsistent with the evidence (Tr. at 31), as well as by Plaintiff's statements concerning her daily activities. (Tr. at 321, 336, 678-79.) Despite the disabling amount of pain noted in Dyas evaluation, progress notes for December 7, 2011 state that her pain medication is "essentially effective," although Plaintiff has some difficulty with muscle spasms in her neck and back. (Tr. at 656-58.) A progress note from February 7, 2012 states that Cymbalta is helping her with her pain, and recommends only "conservative therapy" for the treatment of her pain. (Tr. at 652-55.)

Finally, Dr. Dyas assessment conflicts with the medical opinion of other

sources. Dr. Willbourne Crouch ("Crouch") performed a consultative examination of Ms. Harper on January 18, 2012. (Tr. at 640.) Dr. Crouch found, among other things, that she ambulated with a slow gait, could ambulate without an assistive device, get on and off the exam table and could heel and toe walk, although she could not squat and rise. (Tr. at 641.) He diagnosed Plaintiff with chronic low back pain secondary to degenerative disc disease L5-S1; chronic coccydynia but with no evidence of fracture of the coccyx; chronic cervical pain; fibromyalgia by history; degenerative joint disease of the knees bilaterally; and bipolar disorder. (Tr. at 642.) Dr. Crouch also completed a medical source statement where he said that Plaintiff could frequently lift and carry no more than 10 pounds and occasionally lift and carry up to 50 pounds, due to degenerative joint disease in the knees and low back pain due to degenerative disc disease; could sit for two hours at a time and six hours during an eight hour workday, stand for 30 minutes at a time and two hours during an eight hour workday, and walk for 30 minutes at a time and one hour during an eight hour workday; and could occasionally use her hands for pushing and pulling, frequently reach, occasionally use her lower extremities to operate foot controls; occasionally climb stairs, ramps, ladders, or scaffolds and occasionally stoop, but could never kneel, crouch or crawl. (Tr. at 645-47.) The ALJ determined that these limitations were consistent with the objective medical findings and Plaintiff's daily activities and were given "significant

weight." (Tr. at 32.) The objective medical evidence, Plaintiff's activities, and the opinions of other medical sources provided good cause for the ALJ to give little weight to Dyas' opinion as to the Plaintiff's limitations.

Substantial evidence exists to support the ALJ's decision to afford little weight to the opinions of treating sources Roberts and Dyas, and therefore Plaintiff's argument concerning these opinions is unavailing.

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Harper's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 10th day of February 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177825